UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| KAY MOSELEY,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>        Defendant. | No. CV 08-6174-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 23, 2008, seeking review of the Commissioner's denial of her applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on November 19, 2008, and December 4, 2008. The parties filed a Joint Stipulation on May 26, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on April 3, 1952. [Administrative Record ("AR") at 88.] She has a college education during which she received her vocational nursing certificate [AR at 112, 609], and has past relevant work experience as a licenced vocational nurse. [AR at 103-05, 107-08.]

Plaintiff filed her applications for Disability Insurance Benefits and Supplemental Security Income payments on July 13, 2004, alleging that she has been unable to work since June 24, 2004,[1] due to, among other things, pain and stiffness in her arms and hands. [AR at 88-90, 106-13.] After plaintiff's applications were denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 70-75, 77-83.] A hearing was held on September 21, 2006, at which plaintiff appeared with counsel and testified on her own behalf. A vocational expert also testified. [AR at 603-38.] On December 6, 2006, the ALJ issued an unfavorable decision. [AR at 46-56.] On March 15, 2007, the Appeals Council granted plaintiff's request for review and remanded the case to the ALJ for further proceedings. [AR at 40-45.] A second hearing was held on May 15, 2008, at which plaintiff again appeared with counsel and testified on her own behalf. A vocational expert also testified. [AR at 639-74.] On June 20, 2008, the ALJ issued a second unfavorable decision. [AR at 13-25.] When the Appeals Council denied plaintiff's request for review of the hearing decision on August 29, 2008, the ALJ's decision became the final decision of the Commissioner. [AR at 7-11.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial

---

[1] At the first hearing, plaintiff amended her disability onset date to November 14, 2004. [AR at 606.]

2

evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.  THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id.

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial gainful activity since November 14, 2004, the amended onset date of disability.[2] [AR at 18.] At step two, the ALJ concluded that plaintiff has the following severe impairments: "cervical, thoracic, and lumbar degenerative disc disease with a history of mild compression fractures of the thoracic vertebrae and epicondylitis." [AR at 19.] At step three, the ALJ concluded that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [AR at 22.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[3] to perform a wide

---

[2]   The ALJ also determined that plaintiff was insured for Disability Insurance Benefits purposes through December 31, 2008. [AR at 18.]

[3]   Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

4

range of light work[4], with the limitations that she can sit, stand, or walk for six hours in an eight-hour workday and is "precluded from frequent stooping, kneeling, crouching, crawling, balancing, and working above shoulder level." [AR at 22-23.] At step four, the ALJ concluded that plaintiff cannot perform her past relevant work. [AR at 24.] At step five, using the Medical-Vocational Rules as a framework and the vocational expert's testimony, the ALJ concluded that there are "jobs existing in significant numbers in the national economy" that plaintiff is able to perform. [AR at 24.] Accordingly, the ALJ found that plaintiff is not disabled. [Id.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to properly: (1) evaluate plaintiff's mental impairments at step two of the sequential evaluation process; (2) analyze plaintiff's mental impairments according to 20 C.F.R. § 404.1520a and Social Security Ruling[5] 96-8p; (3) develop the evidentiary record; (4) determine plaintiff's RFC and pose a complete hypothetical question to the vocational expert; (5) consider the effects of plaintiff's obesity in determining her disability status; (6) consider the findings of plaintiff's treating physician, Dr. Derek Gong; and (7) consider all the relevant medical evidence. [Joint Stipulation ("JS") at 29-30.] As explained below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**A.    MENTAL IMPAIRMENT**

Plaintiff asserts that the ALJ erroneously concluded that plaintiff has no severe mental impairment. [JS at 30-34, 41-54; see AR at 19.] Specifically, plaintiff contends that the medical "record is replete with uncontradicted evidence supporting that [she] has mental impairments that

---

[4]    Light work is defined as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[5]    Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

would have more tha[n] a 'minimal effect' on an ability to perform work activities." [JS at 31-34.] Plaintiff also argues that the ALJ did not properly evaluate her mental impairments according to the standards set forth in 20 C.F.R. § 404.1520a and SSR 96-8p [JS at 45-49], and that the ALJ erred in failing to develop the medical record before concluding that plaintiff's mental impairments are not severe.  [JS at 49-54.]

A "severe" impairment, or combination of impairments, is defined as one that significantly limits physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520, 416.920.  "The Supreme Court has recognized that including a severity inquiry at the second stage of the evaluation process permits the [Commissioner] to identify efficiently those claimants whose impairments are so slight that they are unlikely to be found disabled even if the individual's age, education, and experience are considered." Corrao v. Shalala, 20 F.3d 943, 949 (9th Cir. 1994) (citing Bowen v. Yuckert, 482 U.S. 137, 153, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987)). However, an overly stringent application of the severity requirement would violate the statute by denying benefits to claimants who meet the statutory definition of "disabled." Corrao, 20 F.3d at 949 (citing Bowen v. Yuckert, 482 U.S. at 156-58).  Despite use of the term "severe," most circuits, including the Ninth Circuit, have held that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. at 153-54); see Hawkins v. Chater, 113 F.3d 1162, 1169 (10th Cir. 1997) ("A claimant's showing at level two that he or she has a severe impairment has been described as 'de minimis'"); see also Hudson v. Bowen, 870 F.2d 1392, 1396 (8th Cir. 1989) (evaluation can stop at step two only when there is no more than minimal effect on ability to work). An impairment or combination of impairments should be found to be "non-severe" only when the evidence establishes merely a slight abnormality that has no more than a minimal effect on an individual's physical or mental ability to do basic work activities.  See Corrao, 20 F.3d at 949 (citing Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)); see also 20 C.F.R. §§ 404.1521(a), 416.921(a). "Basic work activities" mean the abilities and aptitudes necessary to do most jobs, including "physical functions . . . ," "[u]nderstanding, carrying out, and remembering simple instructions," "[u]se of judgment," "[r]esponding appropriately to supervision, co-workers

1  and usual work situations," and "[d]ealing with changes in a routine work setting." 20 C.F.R. §§
2  404.1521(b), 416.921(b).

3  Plaintiff began receiving mental health treatment through the Veterans Administration in
4  2006. [See AR at 19, 433-38.] She received treatment from Dr. Jennifer O'Day from June 2006
5  to May 2007.  [AR at 449-57, 462-67, 509-11, 517-19, 532-33, 541-43, 551-53.]  Dr. O'Day
6  diagnosed plaintiff with, among other diagnoses, post traumatic stress disorder in partial
7  remission, social phobia in partial remission, panic disorder in remission, and depressive disorder
8  in remission, and prescribed plaintiff, among other things, Depakote and Prozac to treat her mental
9  health impairments.[6]  [See AR at 463, 532, 542, 551.]  On March 27, 2007, Dr. O'Day completed
10 two forms evaluating plaintiff's mental impairments and resulting functional limitations: a "Short-
11 Form Evaluation for Mental Disorders" ("SFE") and a "Medical Source Statement (Mental) For
12 Treating Physicians to Complete" ("MSS").[7]  [AR at 36-39.]  Specifically, in completing the SFE,
13 Dr. O'Day opined that plaintiff is impaired in her abilities to 1) understand, remember, and carry
14 out complex instructions; 2) maintain concentration, attention, and persistence; 3) perform
15 activities within a schedule and maintain regular attendance; 4) complete a normal workday and
16 workweek without interruptions from psychologically based symptoms; and 5) respond
17 appropriately to changes in a work setting. [AR at 38.] Dr. O'Day opined in the MSS that plaintiff
18 is "moderately limited" in her abilities to understand, remember, and carry out technical, complex,
19 or simple job instructions; deal with the pubic; maintain concentration and attention for at least two-
20 hour increments; and withstand work pressures.  [AR at 39.]

21 Dr. Ronnie Cummings took over plaintiff's psychiatric treatment beginning July 9, 2007, and
22 treated her for depression and anxiety until January 2008.  [AR at 490-92, 498-502, 506-07.]  Dr.
23 Cummings completed a MSS form on January 14, 2008, in which he opined that plaintiff was

---

[6] Prozac is used to treat depression, panic disorder, and depressive episodes associated with bipolar disorder. See Physicians' Desk Reference, at 1941 (64th ed. 2010). Depakote is used to treat mania associated with bipolar disorder. See id. at 426-27.

[7] The SFE is a California Department of Social Services form, and the MSS is a Social Security Administration form.  [See AR at 35-39.]

"markedly limited" in her abilities to relate and interact with supervisors and coworkers; understand, remember, and carry out technical, complex, or simple job instructions; deal with the pubic; maintain concentration and attention for at least two-hour increments; and withstand work pressures. [AR at 489.]

In the decision, the ALJ found that "[a]lthough [plaintiff] alleged depression, anxiety, and post-traumatic stress disorder, I conclude [plaintiff] does not have a severe mental impairment." [AR at 19.] In reaching this conclusion, the ALJ found that plaintiff received infrequent mental health treatment and commenced mental health treatment relatively recently; and plaintiff's psychiatric treatment records indicated that she was doing well on Prozac, that her mental health problems were in "remission" and "resolved," and her "only anxiety was trying to get her social security disability benefits." [Id.] The ALJ rejected Dr. Cummings' findings that plaintiff's functional capacity is markedly limited in several respects as being "entirely inconsistent with the medical records relating to [plaintiff's] mental health complaints from the treating sources" and because he failed to "discuss any significant objective findings in a narrative form or report any results of clinical tests." [AR at 19-20.] The ALJ also noted that Dr. O'Day had reportedly submitted a medical source statement regarding plaintiff's mental health limitations, but that Dr. O'Day's statement was not admitted into evidence.[8] [AR at 19; citing AR at 517.] The ALJ concluded that the statement's absence from the record "certainly suggests that ... [Dr. O'Day's] statement would not have supported [plaintiff's] allegations of a severe mental impairment." [Id.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight

---

[8] It appears that Dr. O'Day submitted her SFE [AR at 36-38] and MSS [AR at 39] on March 27, 2007, to a California Department of Social Services Disability Evaluation Analyst [see AR at 35], but that these records were not marked as part of the administrative record until after the ALJ's June 20, 2008, decision. [See AR at 517; JS at 52.]

than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen, 80 F.3d at 1285. Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. However, the ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); see also Orn, 495 F.3d at 632 ("[e]ven when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations omitted); SSR 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected). Here, the ALJ improperly rejected Dr. Cummings' opinion concerning the limiting effects of plaintiff's mental impairments.

To the extent the ALJ determined that Dr. Cummings' assessment regarding plaintiff's marked limitations was inconsistent with the medical evidence and unsupported by objective findings, that was an inadequate basis, on its own, for rejecting Dr. Cummings' medical opinion because it fails to reach the level of specificity required for rejecting an opinion of a treating physician. See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.").

Furthermore, the ALJ's conclusion that Dr. Cummings' opinion was inconsistent with the medical evidence is undermined by the ALJ's failure to adequately develop the medical evidence concerning Dr. O'Day's missing statement regarding plaintiff's mental limitations. The ALJ has an affirmative "duty to fully and fairly develop the record and to assure that the claimant's interests are considered ... even when the claimant is represented by counsel." Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (ellipsis in original) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th

1  Cir. 1983)); see Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). If evidence from a
2  medical source is inadequate to determine if the claimant is disabled, an ALJ is required to
3  recontact the medical source, including a treating physician, to determine if additional needed
4  information is readily available. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1); see also Webb
5  v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) ("[t]he ALJ's duty to supplement a claimant's record
6  is triggered by ambiguous evidence [and] the ALJ's own finding that the record is inadequate").
7  "In cases of mental impairments," the ALJ's duty to clarify and develop the record "is especially
8  important." DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991); see also Tonapetyan, 242
9  F.3d at 1150 (ALJ's duty to develop the record is heightened where the claimant is mentally ill and
10 thus may be unable to protect her own interests). The responsibility to see that this duty is fulfilled
11 belongs entirely to the ALJ; it is not part of the claimant's burden. White v. Barnhart, 287 F.3d
12 903, 908 (10th Cir. 2001).
13       In the decision, the ALJ explicitly noted that Dr. O'Day had submitted a medical source
14 statement concerning plaintiff's mental limitations, but that the statement was missing from the
15 evidentiary record. [AR at 19.] As Dr. O'Day's statement pertained to plaintiff's mental limitations
16 and was one of only two evaluations in the record in which a psychiatrist assessed plaintiff's
17 mental limitations (and the ALJ rejected the other psychiatric evaluation), the fact that Dr. O'Day's
18 statement was missing from the record triggered the ALJ's duty to take steps to obtain the
19 statement before determining plaintiff's disability status. See 20 C.F.R. §§ 404.1512(e)(1),
20 416.912(e)(1) (the Administration must "seek additional evidence or clarification from [a claimant's]
21 medical source when the report from [a] medical source contains a conflict or ambiguity that must
22 be resolved, [and when] the report does not contain all the necessary information"). The ALJ's
23 conclusory assertion that the statement's absence "certainly" meant that it contradicted plaintiff's
24 alleged mental impairments is not supported by the record. As it turns out, Dr. O'Day's findings
25 in fact *support* both plaintiff's contention that her mental impairments limit her ability to work as
26
27
28

well as Dr. Cummings' opinion concerning plaintiff's mental limitations.[9] The ALJ's failure to locate and consider Dr. O'Day's assessment of plaintiff's work-related mental limitations was error, especially since Dr. O'Day's report was in the Administration's possession a year before the ALJ's decision. [See AR at 36-39, 517.] Remand is necessary so that the ALJ can further consider the severity of plaintiff's mental impairments in light of Dr. O'Day's and Dr. Cummings' findings.

Further, in concluding at step two of the sequential analysis that plaintiff's impairments are not severe, the ALJ also did not properly account for plaintiff's mental impairments according to the requirements set forth by 20 C.F.R. §§ 404.1520a and 416.920a. The regulations provide the special "technique" that the Administration must use when "[r]ating the degree of functional limitation" resulting from a claimant's mental impairment(s). See 20 C.F.R. §§ 404.1520a(c), 416.920a(c). Specifically, the Administration must assess a claimant's ability to perform four categories of work-related functions -- 1) activities of daily living; 2) social functioning; 3) concentration, persistence or pace; and 4) episodes of decompensation -- by using a five-point scale (none, mild, moderate, marked, or extreme) to evaluate a claimant's functional limitations in categories one through three, and by using a four-point scale (none, one or two, three, four or more) to assess the number of episodes of decompensation a claimant has experienced according to category four. Id. When the mental impairment evaluation technique takes place at the hearing level, the ALJ must "document [the] application of the technique in the decision," and "[t]he decision must include a specific finding as to the degree of limitation in each of the [four] functional areas described in [subsection] (c)." 20 C.F.R. §§ 404.1520a(e), 416.920a(e). An ALJ's proper use of the technique is especially important when considering the severity of a claimant's mental impairment at step two of the sequential analysis. See SSR 96-8p ("The psychiatric review technique described in 20 C.F.R. [§§] 404.1520a and 416.920a ... requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' criteria of the adult mental disorders listings. ... [T]he

---

[9] The significance of Dr. O'Day's report was further demonstrated by the vocational expert's May 15, 2008, hearing testimony that plaintiff's ability to work would be impacted if she has mental work-related restrictions. [See AR at 669-72.]

1  limitations identified in the 'paragraph B' and 'paragraph C' criteria ... are used to rate the severity
2  of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.").

3  In the decision, the ALJ failed to properly document her application of the psychiatric review
4  technique as required by the Administration's regulations as she did not describe plaintiff's mental
5  limitations with regard to any of the four categories described above. "Where the rights of
6  individuals are affected, it is incumbent upon agencies to follow their own procedures." Morton
7  v. Ruiz, 415 U.S. 199, 235, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974). When a claimant presents a
8  colorable claim of a mental impairment, an ALJ must rate the claimant's limitations according to
9  the technique's four categories, "and such ratings **must** be included in the ALJ's written decision."
10 Behn v. Barnhart, 463 F.Supp. 2d 1043, 1047 (C.D. Cal. 2006) (emphasis in original). See
11 Gutierrez v. Apfel, 199 F.3d 1048, 1050-51 (9th Cir. 2000) (an ALJ's failure to follow the
12 procedures for evaluating mental impairment according to a former version of 20 C.F.R. §
13 404.1520a required remand where the claimant had a "non-frivolous" or "colorable" claim of mental
14 impairment)[10]; see also Kohler v. Astrue, 546 F.3d 260, 266-69 (2d Cir. 2008) (remanding claim
15 for SSI and Disability Insurance Benefits where ALJ's decision denying benefits did not reflect
16 application of the special technique required by current version of 20 C.F.R. § 404.1520a)
17 (discussing Gutierrez, 199 F.3d at 1051). The ALJ did not conclude that plaintiff has frivolously
18 claimed that she suffers from mental impairments, nor does the record support such a conclusion.
19 Rather, the record shows that plaintiff has received psychiatric treatment since 2006 and that two

---

[10] At the time of the Ninth Circuit's decision in Gutierrez, 20 C.F.R. §§ 404.1520a and 416.920a required ALJs addressing claimants' mental impairments to append their written decisions with completed Psychiatric Review Technique Forms. See Gutierrez, 199 F.3d at 1049-50. That requirement was modified in 2000, and ALJs are now required to include the application of the technique in their decisions. See 65 Fed. Reg. 50746-01, at 50748; 20 C.F.R. §§ 404.1520a(e), 416.920a(e). In an unpublished decision, Selassie v. Barnhart, 203 Fed.Appx. 174 (9th Cir. 2006), the Ninth Circuit reaffirmed its holding in Gutierrez as it applies to the current version of 20 C.F.R. §§ 404.1520a and 416.920a. The Selassie court held that "[t]he specific documentation requirements ... are not mere technicalities that can be ignored as long as the ALJ reaches the same result that it would have if it had followed those requirements." Selassie, 203 Fed.Appx. 174, at * 1. Rather, the Administration's "failure to evaluate ... [evidence of mental impairment] under the § [404.]1520a technique prevent[s] the Social Security Administration from considering adequately [a claimant's] 'colorable claim of a mental impairment.'" Id.

of her psychiatrists have opined that her impairments cause her to be moderately or markedly limited in several work-related areas. The ALJ's failure to explain the application of the Administration's mental impairment evaluation technique in the decision requires remand.

**B.     THE ALJ'S CONSIDERATION OF PLAINTIFF'S PHYSICAL IMPAIRMENTS**

Plaintiff contends that the ALJ improperly considered the medical evidence pertaining to her physical limitations in determining the RFC, in soliciting testimony from the vocational expert, and in ultimately finding plaintiff not disabled. [JS at 55-60, 64-68, 70-73.] Specifically, plaintiff asserts that the ALJ improperly rejected the opinion of plaintiff's treating physician, Dr. Derek Gong; credited the opinion of Dr. Jeff Altman, a consultative medical examiner; and failed to consider the impact of plaintiff's obesity. [Id.]

Plaintiff sought medical treatment from Dr. Gong from July 2004 to August 2006. [See, e.g., AR at 188-93, 290, 397-400, 410-13.] Dr. Gong's treatment notes from July 2004 indicate that an x-ray revealed that plaintiff had disc space narrowing in her spine at C5/6 with moderate degenerative changes. He also diagnosed plaintiff with epicondylitis in her elbows due to a motor vehicle accident. [AR at 188-89, 290.] CT scans and x-rays revealed that she had multiple fractures on her spine after being hit by a car while riding her bike on November 14, 2004. [AR at 345-50, 356.] In treating plaintiff's back pain in October 2005, Dr. Gong ordered MRIs of plaintiff's spine. [AR at 387-91.] An MRI of plaintiff's thoracic spine revealed that she had "degenerative facet joint disease," "hypertrophic changes and ... mild chronic superior endplate wedging." [AR at 390.] Dr. Gong also noted posterior disc bulging in plaintiff's cervical spine. [Id.] An MRI of plaintiff's lumbar spine revealed "chronic superior endplate compressions," "very mild wedging," "nonacute compression fractures," "mild retropulsion of the posterior superior margin of T12," and "degenerative facet joint arthropathy." [Id.]

On January 18, 2005, Dr. Gong completed a "Medical Source Statement (Physical) for Treating Physician to Complete" in which he diagnosed plaintiff with "bilateral epicondylitis [and] vertebral compression fracture." [AR at 365.] Based on these diagnoses, Dr. Gong opined that plaintiff can carry less than 10 pounds, stand less than two hours, and sit continuously (with

normal breaks) for less than six hours in an eight-hour workday. [Id.] He also noted that she was unlimited in her abilities to push or pull hand or foot controls. [Id.] On January 18, 2005, Dr. Gong also completed a "Physical Residual Functional Capacity Questionnaire" in which he noted plaintiff's reports of pain in her arms when lifting and episodic pain in her back when sitting, standing, and walking. [AR at 366-72.] Dr. Gong stated that he could not assess whether plaintiff's subjective complaints and symptoms could be substantiated by objective medical findings. [AR at 367.]

In the decision, the ALJ rejected Dr. Gong's findings "because his conclusions are based primarily on the complaints of pain and limitation reported to him by the claimant." [AR at 20.] An ALJ may properly reject a treating physician's opinion that is based solely on the subjective complaints of the claimant whose credibility has been properly discredited and where there is "no objective evidence to support [the physician's] diagnoses, not even a clinical observation." Tonapetyan, 242 F.3d at 1149. Here, however, Dr. Gong's opinion in the Medical Source Statement concerning plaintiff's functional limitations with regard to lifting, standing, and sitting followed his diagnoses of epicondylitis and vetebral compression fractures. These diagnoses were supported by objective medical tests (such as MRIs, x-rays, and CT scans) and clinical findings. [See AR at 290, 345-50, 356, 387-91.] Therefore, the ALJ's rejection of Dr. Gong's opinion as being based on plaintiff's subjective complaints was not wholly accurate, and was an inadequate reason for rejecting the treating physician's opinion. See Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify her conclusion.) On remand, the ALJ is instructed to further consider Dr. Gong's medical findings and opinions regarding plaintiff's orthopedic functional limitations.[11]

---

[11] Because further consideration of the medical evidence is warranted, the Court does not decide whether the ALJ erred in crediting Dr. Altman's findings and in failing to consider the impact of plaintiff's obesity on her orthopedic conditions. [See JS at 55-58, 65-68.] On remand, the ALJ should consider if and how plaintiff's obesity impacts her orthopedic conditions. See SSR 02-1p (an ALJ is required to consider a claimant's obesity at steps two through five of the sequential evaluation process, in combination with the claimant's other impairments). See also Celaya, 332 F.3d at 1181-82 (requiring ALJ to consider how obesity impacts a claimant's other impairments).
(continued...)

**C.    THE RFC DETERMINATION AND THE VOCATIONAL EXPERT TESTIMONY**

Plaintiff asserts that the ALJ erred in determining plaintiff's RFC and in soliciting testimony from the vocational expert. [JS at 55-60.] Specifically, plaintiff asserts the ALJ's RFC determination is not supported by substantial evidence and improperly excluded some of plaintiff's limitations, and that the hypothetical question posed to the vocational expert was likewise inadequate. [Id.]

In determining plaintiff's disability status, the ALJ had the responsibility to determine plaintiff's RFC after considering "all of the relevant medical and other evidence" in the record. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c). Similarly, "[t]he hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out *all* the limitations and restrictions of the particular claimant.' Thus, an RFC that fails to take into account a claimant's limitations is defective." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (emphasis in original) (citing Embrey, 849 F.2d at 422).

Since, as explained herein, the ALJ did not properly develop or consider the relevant medical evidence, her RFC determination, which was based on her consideration of the evidence, was also erroneous. As such, on remand, the ALJ must re-assess plaintiff's RFC once the evidence has been reconsidered. Further, as the ALJ based her questions to the vocational expert on her consideration of the medical evidence, new vocational expert testimony may be necessary if, after reconsidering the medical evidence discussed above, the ALJ credits any of the limitations assessed by Dr. O'Day, Dr. Cummings, or Dr. Gong that the ALJ previously excluded from her RFC determination.

/

/

/

/

---

[11](...continued)
[See AR at 390 (Dr. Gong's treatment note indicating plaintiff's obesity and that her "significant weight gain ... will exacerbate current disability").]

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to: 1) reconsider the medical evidence pertaining to plaintiff's mental impairments and orthopedic conditions; 2) reassess the severity of plaintiff's mental impairments in light of the reconsidered evidence and using the technique required by 20 C.F.R §§ 404.1520a and 416.920a; 3) assess the impact of plaintiff's obesity on plaintiff's disability status; 4) reassess plaintiff's RFC; and 5) if necessary, obtain new testimony from a vocational expert. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: February 23, 2010

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

16